All right, our third case today is number 20-14517, Wave Cruiser v. Great Lakes Insurance SE. And Mr. Naughton, we'll start with you. Thank you and good morning. Clay Naughton on behalf of the appellant in this case, Wave Cruiser LLC. We've asked in this appeal for the court to look at two issues. The first is whether the court erred in shifting the burden of proof for the cause of the loss in this all-risk insurance policy to the insured. And the second is in accepting the opinion testimony, which is technical in nature, regarding the cause of the loss from someone, from a witness, third-party witness, who had admitted that it was not qualified as a witness, as an expert witness, to give this type of testimony and would not, at trial, give any sort of opinion testimony based on causation. First regarding the burden shifting issue, the issue here was related to an all-risk insurance policy. And under the case law in this court that governs, called Morrison, there are two things that need to happen in an all-risk insurance policy for coverage to occur. The first is the burden is now on the insured to prove that there was a fortuitous loss, that is, a loss that was caused by fortuity. At this point, according to Morrison, the burden shifts to the insurer. Now, the insurer at this point . . . Well, so far so good, right? The district court said that you met your initial burden with regards to a loss that was fortuitous. Exactly, Your Honor. And there is no dispute from anyone, and the court also found that we proved that there was a fortuitous loss. The issue arises in the second element here, which is that the insurer must then come in and prove that one of its exclusions applies in order to show that there was no coverage. And instead of keeping the burden of proof on the insurer in this case, Great Lakes, the court shifted the burden of proof to the insured wave cruiser. Right, so let's talk about that issue. Now, there is a recognized principle of insurance law, not in the maritime setting, that when you have an exception to an exclusion, it is the insured who has the burden. So first, the insurance company has to prove that the exclusion applies. Right? Under some states' laws, there is this rule where if there is an exception to an exclusion, the burden then shifts back to the insured. However, this is not the case in admiralty law. No, in admiralty law, there is no entrenched federal precedent that I could under maritime law that expressly addressed that issue of an exception to an exclusion? I think under Morrison and the cases that follow Morrison, that issue is addressed. And there are a number of quotes from Morrison. Well, what do you think, before you tell me about Morrison, what do you think is the best case for you anywhere in the country that says that as a insurance company has the burden to negate an exception to an exclusion? I think Morrison is probably the best exposition of the burden-shifting principles that apply in this case. And it talks about exceptions to an exclusion? What Morrison talks about is what's at issue in this case, really, is when an insurance company tries to put the burden on the insured to say there's an external cause. Morrison said, under those circumstances, what we do is we look at the entire purpose of the relationship between the parties. In this case, it's an all-risk insurance policy, which the court recognizes was specifically created for the type of loss that's at issue here where nobody really knows what happened. It's to protect against those circumstances where nobody can say for certain what caused the loss. That's the purpose of having an all-risk insurance policy. Right. But this is a weird sort of exception, exclusion, because it's not an exclusion based on causality. It's an exclusion based on type of loss. It just says engine loss is excluded unless you have an external cause. It's like saying the deck is not covered unless you have an external cause. And the policy in this case has a choice of law clause. And it says that if there's no entrenched federal admiralty law, then you apply New York law. And New York law places the burden on you to prove an exception to an exclusion. And it's our position, Your Honor, that admiralty has filled the field in this regard. That Morrison has and does govern the burdens of proof related to all-risk policies. As a matter of fact, in the case La Madrid, this court says specifically, quote, Morrison itself expressly holds that federal maritime law governs the burden of proof issue. And Morrison's exposition is the most recent exposition of Morrison is applicable here. But what did Morrison say about exclusions? Well, and what did Morrison say about exclusions? Well, Your Honor, what Morrison said about exclusions was that where there was this must be an external source issue that the court would not enforce it, that the court would not put that burden on the insured because it was against and it was contrary to the very purpose of this type of insurance. The court said, quote, as has been recognized in other circuits, it would appear that all-risks insurance arose for the very purpose of protecting the insured in those cases where difficulties of logical explanation or some mystery surrounding the loss or damage to the property exists. And therefore, it would be inconsistent with broad protective purposes of all-risk insurance to impose on the insured, as the insurer would have us do, the burden of proving the precise cause of the loss or damage. And that's at step one of coverage or the step whatever of an exclusion? I believe the way it arose in Morrison was that the coverage, what the coverage said, we hereby accept all risks except for the or accepting that it must be caused by an external source. So it's been very similar in the sense that what is at issue here is that the insurance company is trying to limit their all-risk insurance by having the insured in the case have to prove that the source of the loss was external. And the Morrison court, similar to courts that followed Morrison, said that they would not do that because courts in various circuits, and it cites a number of other circuits, would not impose that type of restriction on all-risk maritime insurance policies created specifically for the purpose of covering the unknown. Those instances where logic cannot be applied to determine the cause of the loss. So here in this case, we have a situation where it is agreed that the cause of the loss could not be determined. It could not be determined by Great Lakes whether or not the loss was caused by some sort of internal malfunction or if it was caused by an external source. Instead what we had was a non-expert witness who came in and said, I saw various things that were broken in the engine. Well, of course, things with a catastrophic engine failure has occurred here. Things will be broken in the engine. But what he couldn't do and what he did not do was explain the actual root cause, which is the issue here. And it is our position that it was Great Lakes' burden to actually show what the cause of the loss was in order for it to apply its exclusion. And there's case law that says that an insurance company must specifically show that the exclusion that they are trying to fall under applies in this case or in that particular case. Here, that hasn't happened because Great Lakes has not been able to show what the cause of the loss was and that it was something internal rather than external. Before you sit down, tell us why Allen's testimony was not proper lay opinion testimony. Well, because it relies on technical information. I mean, he is opining as to the cause of diesel engine failures. There is no way that testimony regarding the intricacies of whether or not and why a diesel engine failed are not technical in nature. He testified based on his experience, based on his observations, and those are the two requirements for lay opinion testimony, aren't they? They are, but under Rule 701, the only kind of lay opinion that can be elicited or can be relied on in the court are things that are not based on scientific, technical, or other specialized knowledge within the scope of 702. And here, he was even disclosed initially as an expert. They had to withdraw him after Mr. Allen was deposed and he said, you know what, I'm not an expert in this case. I'm not qualified as an expert on diesel engines. I have no opinions regarding causation. I'm afraid I just, I don't have that sort of testimony to give in this case. So your whole case, I don't want to oversimplify things, but it comes down to who bears the burden because you didn't put on any evidence that there was loss from an external cause. It was just equipoise. Nobody did anything. Nobody moved the needle one way or another. So if they had the burden, they lose. If you have the burden, you lose. Well, there was some evidence that the cause of the loss was external and that what we presented- What was that? The vessel had just been inspected. It had just been purchased and when the engines had their catastrophic failure, it was being moved from where it was purchased to its home port in Miami. Right just prior to being moved, the engines had been inspected and had been surveyed and a sea trial had been conducted with diesel mechanics on board and all parties agreed the engines had been properly maintained, that they were in good working order and that this failure occurred long prior to when it should have occurred. But that happens to products, hopefully not often, but it happens to products that they just cease to function before their effective lifespan is over. It may happen. Your argument is these engines were in good working order. They failed before their life expectancy ran. Ergo, it had to be an external cause. It's more likely than not that it was an external cause because an internal- And who says that? What evidence do you have to say that that one follows from another? Well, there is evidence that was admitted by their surveyor that's in the record in one of his reports that says that the vessel engines had just been inspected and that they were considered in good working order. And then we have reports- You don't need expert testimony? You're faulting them for not having expert testimony if they have the burden, and then you don't have expert testimony on your side either? Well, it's an admission, Your Honor. What's an admission? They have admitted that the engines were in good working order and were inspected just prior to the loss. But does that get you to a jury? It is our position that it does, yeah. So you get up in front of a jury, and you put on evidence that says this was basically a brand new engine, went through a sea trial, everything okay, vessel was moved, no problems, and then this. We rest. You win. As the vessel was being moved. In the absence of any countervailing evidence to show that it was something internal, then that- That's enough to win you the case. It may be. I suppose it would depend on the jury, but yes- No, no. I take that. I mean, you're saying as a matter of law, if a jury returned a verdict in your favor on that evidence, the verdict would stand. It's a featherweight burden. At the scales of justice, if there's slightly more evidence in our favor that there is an external event rather than something internal, then I think we can prevail, and I think it would be proper as a matter of law to prevail. And here, there is no evidence showing anything- And your opponent win on summary judgment in the absence of Captain Allen's testimony being admitted? I do not believe so. Tell us why not. Because there would be no evidence in their favor showing that the cause of the loss was internal rather than external. And depending, of course, on the court's ruling concerning burdens, if it is Great Lakes' burden to prove the cause of the loss is an excluded cause, then they have no evidence that would support that. Help me with the burdens. I'm a little confused. As I understood the burdens, first the insured has the initial burden of proof to show the vessel's loss is covered under the policy's all-risk policy. That's the first burden, right? That's correct. And nobody disputes that you met that burden? That's correct, Your Honor. The second burden, once the insured has satisfied this, the burden of proof shifts to the insured, does it not, to prove that a policy exclusion unequivocally applies and excludes the insured's loss? That's correct. That burden rests with the insurance company? That is correct. If, indeed, they establish that, the burden presumably shifts back to you to prove that an exception to the policy exclusion in question applies. Do I have that right? I think everything except for the last statement because the exclusion in this case is exclusion R. It's a single exclusion. It says everything is excluded regarding the engines unless it's caused by an external source. That is the exclusion. They have the burden of establishing that exclusion to coverage A to it R applies here, right? That's correct, Your Honor. They would have to show the damage to the scheduled vessels, engines, etc., unless caused by an accidental external event such as a collision, etc. That's their burden. That's correct. Their burden would be to prove that R applies and exclusion R only applies if it was caused, if the damage was caused by an internal event rather than an external event. Therefore, their burden would be to prove, well, it was internal, it wasn't external. I've got it. Thank you. All right. Thank you very much. Thank you. You've saved your time for rebuttal. Mr. Goldman. Your Honors, my name is Michael Goldman. I represent Great Lakes in this matter. Your Honor, Judge Jordan, as you rightly put it, this matter has to begin with Wilburn Boat. Wilburn Boat says that when interpreting any issue, any clause of the policy or any legal issue that's in dispute, whether it's, let's say, for instance, material misrep on the application, we have to ask, is there an entrenched rule of federal admiralty law dealing with this specific issue? The answer in this case is that there is an entrenched rule of federal admiralty law dealing with the fortuity doctrine. That's what the binding decisions from this court, the recent decisions say. That is, La Madrid v. National Union, and that is the more recent case of Great Lakes v. Can Do. Both of those cases involved an internal mechanical failure where the insurer said that absence of evidence of causation meant there was no fortuity, and this court held that that was incorrect, that in the case of La Madrid, an internal valve failure with no known cause was a fortuity, and that an internal fuse failure in Can Do without any evidence of causation was a fortuity. That's the federal rule. The federal rule then shifts the burden to us. That's the way you interpret Morrison too. Say again? That's the way you interpret Morrison too as dealing with step one and fortuity, although it involves same type of language and discussion about external internal cause, and you read Morrison as not reaching the exclusion issue. That's right. Morrison doesn't reach the exclusion issue, but it does reach the external cause because it says all risks of physical loss from any external cause. In that today, under all risks, used to be that external was implied under all risks, but that's no longer the case anymore since La Madrid at least. They did impose a heightened external cause requirement, and in Morrison, they met that heightened requirement by showing that the urea, which was the cargo on the vessel, was destroyed by water. Water is not internal to bags of urea. There was no evidence presented on the cause of the water, and the Fifth Circuit held they didn't have to show that because the water was external to the urea. They had satisfied that somewhat heightened burden of showing an external cause. I was thinking of an example, Your Honor, the Thoreau example of the trout in the milk. Water wasn't in the vessel when it departed from Georgia full of bagged urea. Water was in the vessel and had destroyed the urea when it arrived in Mississippi. Even if you can't nail down the exact cause of the intrusion of water, just like the trout in the milk, you don't often get water in a vessel that didn't have any to begin with. So in that case, the Fifth Circuit held showing the intrusion of water satisfied the fortuity element and the slightly elevated burden of showing an external cause. Let me ask you a question. Yes, Your Honor. Accepting that you have the burden to establish exclusion R, that much you agree, right? To establish its applicability, yes, Your Honor. Correct. Can you prevail on summary judgment if Captain Allen's opinion was improperly admitted? As lay opinion, yes, we can. Because then, I was going to actually dispute with Judge Jordan. I don't think the evidence here is in perfect equipoise. If it were in perfect equipoise, if Captain Allen's opinion, even his lay opinion, were excluded, all you would have is his observation. Right. What I'm asking you specifically is if we sort out the perceptions, the observations he makes as a lay witness, which he's perfectly free to admit as a lay witness, that came in. But if we were to exclude as improper expert opinion testimony, the other stuff, can you prevail more specifically? Just to go right to the core of this, as I see it, he offered five or six observations and opinions. They kind of got mixed together. The observations are easy. They were properly admitted. The gaskets and oil pans were old. Seems to me he could testify about that. He didn't need any particular expertise. Clamshells found on you need 702 expert opinion testimony to take you there. But then it gets a little bit more difficult for me. He says the collecting rod was elongated, suggesting damage of a lengthy period of time. That strikes me as moving into the realm of the testimony of someone who requires specialized technical kind of learning. Then he says cylinders one and six failed because of excess friction at the connecting rods between the cylinders, thereby causing internal engine failure in the area. That strikes me as something going to the testimony of an expert, somebody who can testify about the causes of the failure of a diesel or a combustion engine. To the extent he offered those opinions, if those opinions, the ones I isolated, as opposed to the observations, if the opinions were improvidently admitted by the trial court in order to render the summary judgment in this case, can you prevail? Yes, we can, because even if all of that is excluded as improper expert testimony, it still means that there is zero evidence of an external event. So if you take what we have, if you exclude all of his expert testimony, all we have is their evidence of here is my damaged boat under La Madrid and shifting to us the exclusion burden. The exclusion says no coverage for damage to engines. There's an unless, no coverage for damage to engines. In this particular exclusion, we carry our burden by saying it's all damage to engines and other mechanical gear and we are free to exclude anything we like. We are free to exclude fortuitous losses, certain types of fortuitous losses. So you win, would you Yes, we would, Your Honor, because there is nothing, excuse me, yes, with our, you understand why I'm asking that, I got confused for a moment, Your Honor, but yes, we would still win because our exception says in addition to the fortuity burden, you still have to show something external. And so Captain Allen has given his lay observation that he saw no evidence of anything external. But even if you want to remove that, there is no evidence on their side. There's not the insured, there's not their own lay observation, there isn't an expert saying I looked at it and this right here, this says to me external. And if you, if you look at this specific exclusion, Your Honor, it even doesn't just say external, it gives examples. Here's why, here's where I'm having the problem and you can help me with it, just going right to the point. We've established, if nothing else, that you've got the burden to prove the application of R, right? That's your burden, not the burden of the insured. Can you meet that burden if everything Allen said was knocked out? That's correct. Allen was improperly admitted because the bulk of his testimony really was 702X per testimony. Yes, we do. We still win, Your Honor, because all we are left with is their presentation of a damaged engine, our response, which is no coverage for damage to engines and mechanical components. Then that shifts back to them. So all you have to show is that the engine was damaged? I'm sorry, I missed the first part. All you have to show is that the engine was damaged? That is correct, Your Honor. And then they have the burden of showing that it was an external event? That's correct, Your Honor. We don't have to, when an exclusion is crafted, there's nothing that says it's limited to certain types of causes. An insurer can exclude anything. All it has to show, for instance, the exclusion could have said no damage to engines, period. That is not a risk we are content to bear. But in this case, it says no coverage for damage to engines, but if you can show an external event, we'll cover it. What about the notion, I mean, this is summary judgment, and you can put on a circumstantial evidence case to prove almost anything. What about the argument that engines such as these are not supposed to fail in and of themselves? That still doesn't prove that they fail due to an external cause. Well, if they don't fail in and of themselves, what else is left? It's not true that they don't fail in and of themselves, Your Honor. And no evidence has been presented showing that engines never fail in and of themselves. Engines like these? No engine, no evidence has been shown showing that engines like these show, the evidence here shows they were well made. You would agree that it's unusual for engines in this sort of posture to just discombobulate, right? No, I wouldn't, Your Honor, because litigating... Really? Litigating this for more than a decade, I can tell you it happens all the time that there are non-fortuitous events. We're not talking fortuity. Right. But in this case, there's no evidence one way or the other. Right. The evidence that it was well maintained. In products liability law, which I know is different from federal admiralty law, if you buy a product and the product blows up in your face, that's evidence, circumstantial evidence, even if there's nothing to be recovered to be examined or tested, that something went wrong with the product and there was a design defect or a production defect,  Those are things that are non-fortuitous, Your Honor. So yes, you're absolutely correct. Of course that's fortuitous. I'm sorry, Your Honor. Fortuitous meaning it's not expected. That's not what, even here in the 11th Circuit, Your Honor, that's not what fortuity means. Fortuity doesn't mean unexpected. It means, excuse me, non-fortuitous. Non-fortuitous means inevitable. So in order to be fortuitous, it must be a chance event, a mechanism which has a defect. And forgive me, I didn't come prepared to brief this particular subject. I'd have to go file a supplemental brief with the case law. There's case law saying that an inherently defective part, damaging an engine, is not a fortuity. So when you say, Your Honor, that an engine unexpectedly is damaged, that is not evidence that something external acted on it. It's evidence that it's unexpected. Well, of course, the thing, the problem you have is there's more evidence than just that engines don't generally fail. This loss occurs, if I have the record right, 17 hours, only 17 hours after the last inspection, which revealed no problems with the vessel's engine. So it had just been inspected, and it was only 349 hours of operation after the last service, which reported the engine to be in good order. So taking that evidence in the light most favorable to the non-moving party, the engine, one, was well maintained. Two, its failure occurred well before the end of its projected lifespan. Three, it had been inspected only 17 hours before the loss occurred. So we have those additional facts in this record, do we not? We do. That's correct, Your Honor. None of those things state whether it is more or less probable that something non-fortuitous in the engine, that some event inside the engine, as opposed to some event outside the engine, caused the damage. Now, perhaps that carries the fortuity burden, but nothing in that says it's more or less likely that the damage to the engine was caused by something like a floating object, a grounding, an impact, a collision, a stranding, ingestion of a foreign object, a lightning strike, or a fire. Well, to say that a wave cruiser didn't rely on this, but I want to ask you about it because I want to see what the response is. I'm not an expert by any means on vessels or their engines, but it seems to me that engines don't usually have clamshells in them. Would you agree? I can't say one way or another, Your Honor. What little I know of the subject. No, no, come on, come on. Well, of course, Your Honor. I mean, people don't build expensive vessel engines and decorate them with clamshells, right? No, certainly not, of course not, Your Honor. So, if you had clamshells, let's say mussels instead of clamshells, to a significant degree in the engine, would that be enough to get past summary judgment? Only if they presented evidence that it was the cause. Let's assume for a moment that those are external to the engine. Circumstantial, that wouldn't be enough circumstantial evidence that an engine that is not supposed to have these crustaceans, shellfish, suddenly has them in large quantity. You'd need expert testimony to connect the presence of a foreign body to the failure to get to a jury. Is the evidence in this case or pure speculation, Your Honor? Because there was no evidence that there were any clamshells on the engine. This was an intake that was far separated from the engine. Was not the evidence in this case that the clamshells were found on the intake side of the pump? Yes, there was evidence that they were. Somehow the clamshells got in. Yes, that's correct, Your Honor. My understanding is that they simply grow there. That's why I was going to challenge whether or not that's unexpected. My understanding is that a boat that sits in the water, those simply grow there naturally, Your Honor. They do build up over time. Well, in any event, as I said, there was, Wave Cruiser did not rely on that as a way to defeat summary judgment below. So I'm not suggesting it's properly before us. But it seems to me that if you've got the presence of a foreign body inside of an engine, that might be enough to get you to a jury without expert testimony connecting it to causation. I'm reluctant to admit anything, Your Honor, that's going to lead to us getting sent back and then leading them to the evidence they need to present, Your Honor. But I will say this. There is no evidence that it was in the engine. There's evidence that it was in an intake, which there's nothing suggesting that intake is anywhere near the engine, Your Honor. Also, I would add, is it when it says in the intake, is it on the exterior of the vessel or on the interior of the vessel, Your Honor? I can't remember myself from the record because it was not something that was even a part of that was even argued on summary judgment. It's not something that's in the summary judgment decision. But let's assume something like that was sucked into the engine. That is exactly what we would cover. Something external. One of the things that is specifically listed in Exclusion R is ingestion of a foreign object. So let's say that a clam was ingested. If they had presented evidence that a clam was ingested, we wouldn't be here, Your Honor. That would satisfy Exclusion R. There's no such evidence. Let me ask you this. Going back to what you did put on and what the court did receive, there were two opinions that the former expert now lay witness offered. And I want to ask you whether those were not more properly characterized as expert testimony. One, he said that cylinders one and six failed because, this is an opinion now, of excess friction at the connecting rod journals between the cylinders. Is that not an expert opinion about the functioning of a diesel or combustion engine? I don't think so, Your Honor, because it's based on his direct observation with his own eyes. He observed an elongated rod, which from what I understand from his report and testimony, meant that it was melted. I don't think it is necessarily the requirement. He can observe what the elongated rod looked like. Can he draw an expert opinion inference that that was the cause of the internal engine to fail? Isn't that expert stuff? Yes. With respect to the causation, it would be expert, I think, Your Honor. And does he not offer a causation? Yes, he does, Your Honor. How did that properly come in? Wasn't it error to admit that? To admit it as expert? Yes. He wasn't testifying as an expert. He walked in as a 701 lay witness. That's correct, Your Honor. It was my mistake to put him forward as an expert. He was not. It was his lay observation. Whether it was a mistake to call him or not, I'm simply asking whether that opinion testimony wasn't necessarily expert. He wasn't an expert. And therefore, it was improvidently admitted, and it was an abuse of the considerable discretion he had in taking that opinion. Would you agree with that? I think that's correct, Your Honor. Right. And to the extent that he says the collecting rod was elongating, elongated, suggesting, now we're getting to expert stuff, suggesting damage of a lengthy period of time. That struck me as the opinion of an expert. Am I wrong? The lengthy period of time, I think that is correct. The opinion with respect to excess friction, I don't think that's expert because you don't need an expert, I think, to opine that when something melts, there is excess friction, heat. But the inference you might draw from that would be expert in nature, would it not? I'm sorry, I missed that. The inference you would draw from the observation of friction. That's correct. That's expert stuff too. That's what I think, Your Honor. I have to admit. So there are at least two or three things he says here that were erroneously admitted by the trial judge. You would agree with that, would you not? I agree. If it's expert, yes. That particular point on causation, the inference, I think is expert. That would be expert stuff. Correct. Okay. Thank you. All right. Thank you very much. Thank you, Your Honor. Okay, Mr. Naughton, you've got your time for rebuttal. Thank you, Your Honor. I would like to note that the case that's relied on by the appellee, French Cuff, is a case which did not, as they say in their brief, address Wilburn Boat or talk about admiralty law not applying to the burden-shifting element. In French Cuff, the facts of that case involved parties who had agreed that Florida law applied. And after applying Florida law, the court looked at the, this court looked at the exclusion, an exception to an exclusion issue in that context. That was under Florida law, not under admiralty law. But here you've agreed that if there's no entrenched federal admiralty principle, you apply New York law, right? That's correct. And yet there are no cases that say that there is no entrenched admiralty law on this issue. No, but you have to find a case that has a principle as a matter of federal admiralty law to even come close to entrenchment, right? Well, I think that... And Morrison, which I think is your best case, doesn't speak to exclusions at all. Well, Morrison talks about whether or not it can be the burden of the insured to have to come in and show that there was an external cause. As to the fortuity, which is coverage-based, not exclusion. I don't believe that Morrison is exclusive to fortuity in that instance. You may be right, but that would require extending Morrison, right? We would have to say the rationale of Morrison also applies to exclusions. If we haven't said that yet, how can the principle be entrenched as a matter of federal admiralty law? I think that Morrison says generally, you prove fortuity as the insured, and then the burden shifts to the insurance company to prove everything out, to prove that an exclusion applies, including that it's external. I think that's what Morrison... That's a proposition Morrison stands for. There can never be... Once you prove under an all-risk policy that there was a fortuitous loss, you're done with your burdens. You're done. Everything else is on the insurance company. That's correct. But don't you have more evidence than the mere fortuity? Yes, we do. All right, let's take it off. What is it? Well, we have the evidence that the vessel and the vessel engines were well-maintained, had been recently surveyed, were not expected to fail that soon, that there had been a minimal amount of usage since the survey and inspection, that it was essentially on its initial voyage. Even the adjuster himself essentially said, look, we can't determine the cause here without taking the engines apart. We took the engines apart, and he said, we still can't determine the cause is internal, rather... So your answer to Judge Jordan and me is that the evidence was not in equipoise, holding aside Captain Allen. Well, that's... Correct? That's correct. Holding aside... Without Captain Allen's expert-type opinion testimony that says, I only see internal, so it must be internal, what we have is well-maintained engines that should not have failed except for and without some sort of external cause. So one can infer... That's not necessarily true. Not necessarily true, but more likely than not. And it would be a jury... Why more likely than not? Because engines... What in the record do we look at except for our own intuition to come to that point of view? Well, we can look at what even Captain Allen says in these circumstances. Look, these engines are well-maintained. We looked, and we looked, and we looked, and we can't find the cause here. All we see is some sort of damage to the engine. I mean, it's impossible for Captain Allen to put a finger on what caused the internal loss. Therefore, it's more likely that it's an external cause, especially given the fact that the engines should not have failed at this point. Do you want his testimony out or in? Or part in or part out? We're not going to... We don't want his expert-type opinions in. But you want some of it in. You want some of it in. You want the helpful part in. You want the hurtful part out. I wouldn't put it that way, Your Honor, but there are certain admissions that were made by Captain Allen. How would you put it? What I would say is that there is other evidence that doesn't come from Captain Allen. I mean, he's not a party. It's not an admission of a party opponent. He is the adjuster for Great Lakes. Whether or not he would be considered an agent, that you could have a party opponent in admission, I don't know. But there's also evidence outside of just Captain Allen, though. There are the survey reports. There are the expert, quote-unquote, they're fact witnesses. They are the marine diesel mechanics who looked at the vessel and inspected it and said it is and the engines are in good shape. That they will perform well, all of these things. There is also evidence that the vessel should not have just had a sudden catastrophic failure without some sort of external event. Mr. Norton, help me with what he said and tell me what, in your opinion, was properly admitted and what wasn't from Allen's testimony. One, he says the gasket and oil pans were old. That's an observation. Was that properly admitted as a lay witness in your view? I think as an observation, it may be speculative that they are old. They look old. I'm asking whether he could offer that as a lay opinion based on his observation of the gaskets and the oil pan. Did the district court clearly err as the trier of the admissibility of evidence here under 701 and 702 in admitting that? I take it your answer is no, that wasn't. We can't find error in the district court's determination as to that. I would say no. The second one, clamshells were found on the intake side of the pump. That's simply an observation. He's able to say that. I would agree, yes. You don't make anything of that as Judge Jordan pointed out, right? That's correct. That wasn't something that was in the summary judgment. I would point out that our motion for summary judgment, our statement of undisputed facts was unrefuted. There was no response to our statement of undisputed facts, which included a number of statements concerning- But I just want you to help me because you said in response to Judge Jordan, some of what he said comes in, some of what he said doesn't. If it comes in, it's only as a lay witness under 701. If it's excluded, it's because it was expert testimony under 702. The third thing he observes or says is the underbody intake strainer was found to be intact. I think he can make that observation. The fourth thing he said was collecting rods were elongated, suggesting damage over a lengthy period of time. I think he can say they're elongated, but I don't think he can say- The opinion about what it means should have been excluded. Correct. The fifth thing he said was there was no evidence of damage to the engine propellers suggesting or pointing to a bottom strike. I think- That expert stuff? I think the first part, the propellers were not damaged, may be able to be admitted, but the second part, drawing a conclusion, is an expert type- testimony. The sixth thing he said was cylinders one and six failed because of excess friction at the connecting rods, et cetera, thereby causing the internal engine failure in the area. I take it you agree that's purely opinion testimony. Right. What about no evidence of overheating? He said that too, didn't he? I believe he did say that. Is that expert opinion or is that lay opinion? I would say that that's somewhere in between. That's a very close call. I'm not sure. Okay. Thank you. Thank you. All right. Thank you both very much.